1  Marc Steven Applbaum, Esq. SBN #222511
   MIDWAY LAW FIRM APC
2  4275 Executive Square Suite 200
   LA JOLLA, CA 92037
3  760 484-1203
4  marc@midwaylawfirm.com

5  Attorney for PLAINTIFFS

6

7

8                    **DISTRICT COURT OF THE UNITED STATES**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10
   ELMER W K II COOPER, DENYCE L.          )   Case No: **'25 CV 0052 DMS MSB**
11 COOPER,                                 )
                                           )   **COMPLAINT FOR DAMAGES AND**
12                                         )   **EQUITABLE RELIEF**
                                           )
13          Plaintiff,                     )   **1.VIOLATION OF CALIFORNIA**
                                           )      **HOMEOWNER BILL OF RIGHTS**
14      vs.                                )   **2.STATUTORY UNFAIR COMPETITION -**
                                           )    **CALIFORNIA  BUSINESS AND**
15 NEWREZ, LLC dba SHELLPOINT              )   **PROFESSIONS CODE SECTION 17200**
   MORTGAGE SERVICING, AFFINIA             )   **ET. SEQ.**
16 DEFAULT SERVICER'S, LLC, DOES 1         )   **3. BREACH OF COVENANT OF GOOD**
   through 50, Inclusive                   )   **FAITH AND FAIR DEALING**
17                                         )   **4. NEGLIGENCE**
                                           )
18                                         )
                                           )   **(TRO REQUESTED)**
19          Defendants.                    )
                                           )   **JURY TRIAL DEMANDED**
20                                         )
                                           )
21                                         )
                                           )
22                                         )
                                           )
23                                         )
                                           )
24                                         )
                                           )
25 ──────────────────────────             )

26

27

28

Plaintiffs, ELMER W K II COOPER, DENYCE L. COOPER allege as follows:

**PARTIES**

1. ELMER W K II COOPER, DENYCE L. COOPER ("Plaintiffs") are, and at all times relevant to the facts herein was, individual residing in real property commonly known as 3093 Rancho Del Sol, Escondido, CA 92025 ("Subject Property") located in the County of San Diego in this district. (APN# 239-151-55-00)

2. Plaintiffs are informed and believe and based thereon alleges that Defendant NEWREZ, LLC dba SHELLPOINT MORTGAGE SERVICING is located in Greenville, South Carolina and at all times relevant to the facts herein doing business in this district as a loan servicer for Plaintiff's mortgage.

3. Plaintiffs are informed, believe and thereon allege that Defendant AFFINA DEFAULT SERVICER'S ("Trustee") and at all times relevant to the facts doing business in this district as a trustee in TS Number: 22-04686CA that has scheduled a trustee sale on January 13, 2024 at 9:00AM.

4. The true names and capacities, whether individual, corporate, partnership, associate, or otherwise of Defendants DOES 1 through 50, are unknown to Plaintiffs who sues each Defendant by such fictitious names. Plaintiffs is informed and believes and based thereon alleges each of the Defendants designated herein as a fictitiously named Defendant is, and in some manner, was responsible for events and happenings referred to herein, either contractually or tortuously. When Plaintiffs ascertains the true names of capacities of DOES 1 through 50, they will amend this complaint accordingly.

5. Plaintiffs are informed and believes and based thereon alleges that Defendants and each of them, are, and at all times herein were, the agents, joint ventures, officers, members, representatives,

servants, consultants or employees of their co-defendants, and in committing the acts herein allege, were acting within the scope of such affiliation with knowledge, permission, consent or subsequent ratification of their co-defendants.

### JURISDICTION AND VENUE

6. This Court has federal court jurisdiction over this matter, as the Subject Property is located at 3093 Rancho Del Sol, Escondido, CA 92025 (herein referred as the "Subject Property") in the County of Riverside, California in this district and all other defendants are citizens outside of this state.

8. In addition, this Court has subject matter jurisdiction over the claims raised herein pursuant to 28 USC § 1332 and that the amount of controversy is in excess of $75,000.00.

9. Defendants herein purposefully directed their activities in this district. As a result, Defendants caused an event or events to occur in this district and more particularly in the County of Riverside, out of which this action arises and which form the basis of this action.

10. Defendants are entities that are located outside of this duly licensed to do business in the State of California or are entities that regularly conduct business within this judicial district within California.

11. Venue is proper for this Court since the Subject Property is located in this district because events or events out of which this action arises and which form the basis for this action arise in this district.

10. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is

presented on the face of the Plaintiffs' properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L.Ed.2d 318 (1987)

## STATEMENT OF FACTS

12. On or about June 14, 2006, Plaintiffs obtained a loan in the amount of $300,000.00. As evidence of the loan, Plaintiffs executed a promissory note ("Note"), and concurrently executed Deed of Trust ("Deed of Trust") as security for the Note. The Deed of Trust for the Subject Property was recorded as Document No. 422621 in the Official Records of the San Diego County Recorder's Office. The named Lender in the Deed of Trust was Countrywide Home Loans, Inc.  The named Trustee in the Deed of Trust was Recontrust Co. NA.

12. Subject Property is Plaintiffs' principal residence and is owner-occupied.

13. Subsequently on or about April 2, 2019 Plaintiffs (collectively "COOPER" began experiencing economic hardship and a decreased ability to keep up on the mortgage and spent the following year consistently attempting to keep up on payments all while working to stabilize its financial situation.

14. On or about June 18, 2024, Defendants caused to be recorded a Notice of Default after recording and Assignment of Deed of Trust purported to transfer the beneficial interest under the Deed of Trust and the Notice of Default was recorded as Document 154303 at the San Diego County Recorder.

15.  The NOD contains a boilerplate "Declaration of Compliance" claiming NEWREZ, LLC dba SHELLPOINT MORTGAGE  SERVICING  ("Servicer") complied with Cal. Civ. Code 2923.55 prior to commencing foreclosure activities. More specifically: "The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the

borrower's financial situation and to explore options for the borrower to avoid foreclosure as required." This is false. SERVICER made no attempt to contact Plaintiffs regarding assistance until after the recording of the NOD.

16. At no point did NEWREZ, LLC dba SHELLPOINT MORTGAGE SERVICING (herein referred to as "Servicer" encourage Plaintiffs to apply for assistance or provide Plaintiffs with an exhaustive list of what opportunities may be available prior to the recording. At the time, servicer maintained the only option was to reinstate the loan until the foreclosure sale date of the property was already set contrary to California law.

17. Plaintiffs followed up weekly for status updates. At this point, they became significantly worried that the prolonged review period, continuing to build upon the default, would ultimately disqualify them for modification leaving them with no opportunity to catch up on their payments.

18. On October 9, 2024, Trustee recorded a Notice of Trustee Sale after Plaintiffs engaged a local real estate broker that was treated unfairly by the loss mitigation department at all times material.

19. At no time was Plaintiffs advised that its mortgage note had been again sold to a new servicing company or did the new servicer contact them with loss mitigation options to save their home from foreclosure in violation to California law.

**FIRST CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA HOMEOWNER BILL OF RIGHTS**

(Against ALL Defendants)

20. Plaintiffs hereby incorporate by this reference paragraphs 1 through 19, as though fully set forth herein.

21.  The Homeowner Bill of Rights ("HBOR") consists of a series of related bills including two identical bills that were passed on July 2, 2012 by the state Senate and Assembly: AB 278 (Eng, Feuer, Pérez, Mitchell) and SB 900 (Leno, Evans, Corbett, DeSaulnier, Pavley, Steinberg). Both of these bills ultimately give rights back to borrowers and create a system in which banks can be held accountable for pursuing their own interests above the borrowers.

22.  Lenders, such as "Servicer" and its investor are now legally obligated to ensure a borrower receives a "meaningful" opportunity to be considered for any and all options available to avoid foreclosure. It also guarantees struggling homeowners a single point of contact at their lender with knowledge of their loan and direct access to decision makers, and imposes civil penalties on fraudulently signed mortgage documents.

24.  At least 30 days prior to the recording of an NOD, Cal. Civ. Code § 2923.55 requires that a mortgage servicer contact the borrower to assess their financial situation and provide information regarding all available opportunities to avoid foreclosure.

25.  Upon recording an NOD, a mortgage servicer is also required to include a Declaration of Compliance, certifying that the requirement was adhered to. Here, the declaration states SERVICER'S "exercised due diligence to contact the borrower pursuant to Cal. Civ. Code § 2923.55(f) to assess the borrower's financial situation and explore options to avoid foreclosure." Said declaration is false. Plaintiffs were not provided with an assessment of her financial situation and further were advised of the available opportunities for assistance until after the NOD was recorded.

26.  SERVICER'S's failure to contact Plaintiffs to discuss foreclosure prevention programs evidences that SERVICER'S did not adhere to the requirement of offering Plaintiffs a meaningful review and instead, placed their own interests above Plaintiffs'. Plaintiffs notified SERVICER'S of

the hardship she was experiencing and SERVICER'S failed to provide the GIANNELLI'S with any notice of potential help.

27. Cal. Civ. Code § 2923.6 prohibits "dual tracking," the practice of evaluating a borrower for a modification while simultaneously proceeding with a foreclosure. If a borrower submits a complete loan modification application, the mortgage servicer is prohibited from initiating or continuing foreclosure proceedings until the mortgage servicer makes a written determination that the borrower is not eligible for a loan modification, and any appeal period has expired. Cal. Civ. Code § 2923.6(c)(1).

28. Under Cal. Civ. Code § 2923.6(h), an application shall be deemed completed when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

29. Plaintiffs allege that Defendants continued the foreclosure process while claiming she was in review for a loan modification.

30. Additionally, per Cal. Civ. Code § 2923.6, if a loan modification application is denied, a mortgage servicer is required to send a borrower written notice identifying the reasons for denial, including (1) timing and instructions for requesting an appeal; (2) if applicable, reasons for investor disallowance of the loan modification; (3) information related to net present value calculation, if denial was based on this calculation; (4) if applicable, a finding of a prior failed loan modification; and (5) a description of other foreclosure prevention alternatives for which the borrower may be eligible. A mortgage servicer must provide a borrower at least 30 days from the date of a written denial to appeal the denial and provide evidence that the mortgage servicer's determination was in error.

31.  The denials "Servicer" provided to Plaintiffs did not conform to the above standards. Not only were the bases for the denials inaccurate, Servicer's responses to Plaintiffs' appeals did not include explanations for the discrepancies.

32. Cal. Civ. Code § 2923.7 provides that upon the request of a foreclosure prevention alternative, the mortgage servicer "shall promptly establish a single point of contact and provide the borrower one or more direct means of communication with the single point of contact." There is no requirement that the borrower must specifically request that a single point of contact be assigned. *McFarland v. JPMorgan SERVICER'S,* 2014 WL 4119399 at *11 (C.D. Cal. Aug. 21, 2014); *See also Mungai v. Wells Fargo Bank,* 2014 WL 2508090 (a plain reading of § 2923.7 required lender to assign a single point of contact when a borrower requested a foreclosure prevention alternative).

33.  This provision is intended to prevent borrowers from being given the runaround, being told one thing by one bank employee while something entirely different is being pursued by another." *Lapper v. SunTrust Mortg., N.A.*, 2013 WL 2929377 at 2 (C.D. Cal. June 7, 2013).

34. Cal. Civ. Code § 2923.7(b)(3) requires a contact to have access to current information and be able to timely, adequately, and accurately inform the borrower of the current status of her foreclosure prevention alternative.

35.  Regardless of Servicer's  assigning of "case managers" to Plaintiffs' file, Plaintiffs spent over two years submitting documents to be reviewed. When Plaintiffs did have questions about the review period, the representatives rarely could provide answers. The multitude of submissions of additional documents evidences Servicer's failure to provide Plaintiffs with accurate instructions. The prolonged review period effectively forced Plaintiffs into an unrecoverable default. Had SERVICER representatives been able to provide Plaintiffs with a list of required documents *at one time*, the prolonged review could have been avoided.

36.  Additionally, on more than one occasion, Plaintiffs' assigned case managers made promises to Plaintiffs they could not keep, including the negotiating of down payments and timelines for when a decision would be rendered.

37.  Servicer's failure to provide Plaintiffs with a competent single point of contact caused undue delays in the processing of her loan, which is a material violation of § 2923.7. *Segura v. Wells Fargo Bank, N.A.,* 2014 WL 4798890 (C.D. Cal. Sept. 26, 2014). Had Plaintiffs been able to obtain timely and accurate status updates, she likely would have been able to avoid the prolonged and inefficient review period or procure an alternative means of assistance.

38.  Plaintiffs have suffered and will continue to suffer substantial irreparable harm, including but not limited to the potential loss of the Subject Property, the cost and expense of the instant pending litigation, continuing emotional distress, and other actual consequential damages that will be proven on date of trial. Furthermore, Plaintiffs has been harmed in that they were unable to exercise its rights to reinstate the loan under Cal. Civil Code section 2924c, as well as exercise her right to secure other alternatives to foreclosure after being provided a loan modification that they could not afford that is being alleged to be predatory.

**SECOND CAUSE OF ACTION**
**STATUTORY UNFAIR COMPETITION – CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200 ET SEQ.**

(Against ALL Defendants)

39. Plaintiffs hereby incorporate by this reference paragraphs 1 through 39, as though fully set forth herein.

40. Defendant's conduct as alleged herein constitutes unlawful, unfair or fraudulent business act(s) or practice(s) within the meaning of California Business and Professions Code §17200 et seq.

41. Specifically, Defendants are unlawfully and unfairly proceeding with foreclosure against California homeowners, including Plaintiffs, in direct violation of California Civil Code foreclosure procedure statutes, including newly amended statutes implemented effective January 1, 2013 by way of AB 237 and SB 900.

42. To bring a claim under the "fraudulent" prong of the UCL, borrowers must show that members of the public are likely to be deceived by servicer's actions. Here, SERVICER'S assurance that Plaintiffs' would be properly reviewed for modification, and then it's subsequent delay in processing applications and documentation and SERVICER'S's evident negligence in reviewing Plaintiffs's financials, resulted in increased late fees and penalties and an insurmountable default. This practice could be construed as deceptive to the public. *Pestoni v. Bank of America, N.A.,* 2014 WL 26168402 (Cal. Ct. App. June 12, 2014).

43. The "unfair" prong of the UCL refers to practices that violate legislatively stated public policy. The Homeowner Bills of Rights demonstrates the strong public policy in favor of protecting homeowners from foreclosure, as evidenced by recently enacted state and federal regulations. *See, e.g.,* Cal. Civ. Code § 2923.6 (encouraging the option of loan modification for borrowers). Defendant's unlawful practices described above runs counter to California' stated public policy and have given them an unfair advantage over their competitors. *Perez v. CitiMortgage, Inc.*, 2014 WL 2609656, at *8 (C.D. Cal. June 10, 2014) (finding servicer's misrepresentations regarding borrower's application status led to a deliberately drawn-out and unsuccessful modification process, resulting in harm to the borrower that outweighed the utility of servicer's action). This is precisely what SERVICER'S has done to Plaintiffs.

44. SERVICER misrepresented the status of Plaintiffs application, which unreasonably stalled the modification process and led to the initiation of foreclosure on Plaintiffs' home. Additionally,

SERVICER falsified denials as a means to further build on Plaintiffs' default and lull her into imminent foreclosure.

45. Plaintiffs has suffered injury in fact, including loss of equity in her home by growth in amounts of delinquent interest, declining property value and late fees, costs and expenses related to protecting herself, fees and costs, including but not limited to, attorney's fees and costs and higher cost of obtaining credit due to the deterioration of her credit score.

46. Plaintiffs have additionally been damaged in the amount of foreclosure fees and costs already charged to and added to Plaintiffs' loan, in an amount to be proven at trial.

47. The fees and costs charged by Defendants were charged without any legal authority to do so and in direct violation of the statutory mandate of Cal. Civ. Codes §§ 2923.55 and 2923.6.

48. Defendants must be required to disgorge any profit or gain that they obtained as a result of their wrongful conduct as herein alleged.

49. Plaintiffs is entitled to equitable relief in the form of an order requiring Defendants to disgorge all profits or gain they have obtained from Plaintiffs or at the expense of Plaintiffs and members of the general public by reason of their unlawful, unfair or fraudulent business act(s) and practice(s) and an injunction enjoining Defendants from continuing said acts or practices.

## THIRD CAUSE OF ACTION
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against ALL Defendants)

50. Plaintiffs hereby incorporate by this reference paragraphs 1 through 53, as though fully set forth herein.

51. Defendant's conduct, as alleged above, constitutes a breach of the covenant of good faith and fair dealing implied in every contract under California law. This covenant creates an obligation in

Defendant not to hinder or prevent Plaintiffs' ability to perform under the contract or receive the benefit of the contract.

5W.  On or about June 14, 2006, Plaintiffs entered into a loan agreement, executing a Promissory Note and Deed of Trust in favor of Countrywide Homes Loans, Inc. and subsequently Defendant SERVICER. Plaintiffs alleges that Defendants breached the covenant of good faith and fair dealing and interfered with Plaintiffs' ability to perform under the contract by inducing Plaintiffs into a prolonged review period for assistance whereby SERVICER would not accept Plaintiffs' monthly payments. SERVICER'S further effectively precluded Plaintiffs from qualifying for loan modification by miscalculating Plaintiffs' monthly income, relying upon inaccurate appraisals, and refusing to remedy their indiscretions.

57.  For years, Plaintiffs substantially performed under the loan agreement, making her monthly payments on time and in full every month. Plaintiffs experienced a short period of financial hardship only to get back on her feet and retain the ability to afford the home.

58.  However, when Plaintiffs' hardship ended, SERVICER'S effectively precluded Plaintiffs from performing under the contract by refusing to provide a timely and accurate review despite recognizing Plaintiffs' ability to become current.

59.  Therefore, because SERVICER induced Plaintiffs not to perform under the contract, Plaintiffs' performance was excused as set forth under Cal. Civ. Code § 1511, which states if a defendant does some act naturally tending to induce the Plaintiffs not to perform, the Plaintiffs' failure to perform is excused. *See Boring v. Nationstar Mortg., LLC*, 2014 WL 5473118 (E.D. Cal. Oct. 28, 2014) (servicer's inducement of borrower's delinquency excused borrower's performance under the deed of trust).

60.  When a party is excused from performing, he is entitled to all the benefits of the contract had it been performed by both parties. Cal. Civ. Code § 1512. As such, no conditions existed that would interfere with Defendant performing under the contract, and all conditions necessary for Defendant to fulfill its obligations under the contract had occurred when Defendant coerced Plaintiffs to stay behind on her payments at the mercy of Defendant's negligent and prolonged review. In fact, this promise was designed to induce and coerce Plaintiffs to miss payments so that Defendant could foreclose on Plaintiffs' loan.

61.  As a proximate result of Defendant's acts and practices, Plaintiffs' credit has been detrimentally impacted, and Plaintiffs now risks the loss of his home through foreclosure.

62.  Plaintiffs have incurred contract damages, according to proof at trial, attorney's fees, costs to save the home, and loss of equity.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
(Against ALL Defendants)

63.  Plaintiffs hereby incorporate by this reference paragraphs 1 through 62, as though fully set forth herein.

64. The elements of a cause of action for negligence are well established. They are (a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate or legal cause of the resulting injury. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50Cal.Rptr.2d 309, 91 1 P.2d 496].)

65.  At all times relevant herein, Defendants, acting as Plaintiffs' lenders and servicers, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to

discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited to, disclosing to Plaintiffs the real status of any foreclosure actions taken by it, refraining from taking any action against Plaintiffs outside its legal authority, and providing all relevant information regarding Plaintiffs' loan accounts with Defendants.

66.   In *Alvarez v. BAC Home Loans Servicing*, 228 Cal. App. 4th 941 (2014), the court found that, though a servicer is not obligated to initiate the modification process or to offer a modification, once it agrees to engage in the process with the borrower it owes a duty of care not to mishandle the application or negligently conduct the modification process. *See also*, *Ware v. Bayview Loan Servicing, LLC,* 2013 WT 6247236, at *9 (S.D. Cal. Oct. 29, 2013) [denying motion to dismiss borrower's negligence claim because servicer may owe a duty of care to maintain proper records and timely respond to modification applications].

67.   Accordingly, by engaging in protracted loan modification negotiations with Plaintiffs, Defendants owed Plaintiffs a duty to conduct honest, timely and accurate evaluations of Plaintiffs' loan modification applications and to carefully handle Plaintiffs' sensitive financial and personal information contained in those applications.

68.   It is true that some courts have held that in the standard lender/borrower relationship, a duty of care is not necessarily created. For instance, the court held in *Nymark v. Heart Federal Savings & Loan Association*, 231 Cal. App. 3d 1089, l095 (1991) that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."

69.  However, the *Nymark* court simply found that a duty was not owed under the facts in that case after analyzing them pursuant to the six part test established in *Biakanja v. Irving*, 49 Cal2d 647, 122 P.2d 294, which looks to (1) the extent to which the transaction was intended to affect the

COOPER – AMENDED FEDERAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, (2) the foreseeability of harm to the Plaintiffs, (3) the degree of certainty that the Plaintiffs suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame, and (6) the policy of preventing future harm.

70.   In analyzing the first *Biakanja* factor, whether or not the transaction was intended to affect the Plaintiffs, courts have held that a defendant's conduct is found to affect the Plaintiffs if the defendant commits the conduct with knowledge of Plaintiffs' circumstances. *See e.g., Jolley v. SERVICER'S Financial, LLC* (2013) 213 Cal.App.4th 872, 900.

71. Here, by stringing Plaintiffs along for years in pursuit of a modification, Defendants undeniably intended to affect Plaintiffs. Defendants knew that prolonging Plaintiffs' review period for years would forever change her status regarding her mortgage for the worse.

72.   Defendants should have foreseen the harm being done to Plaintiffs due to their knowledge and expertise in the financial industry as well as complete control over Plaintiffs' loan and loan modification review process. Further, it only requires common sense to determine that (1) if a lender decides to commence foreclose on a borrower's home without first providing the borrower a written determination of the borrower's loan modification application, or advise her of her appeal rights, the ensuing foreclosure will ultimately harm the borrower; and (2) that a borrower's credit will be harmed and the borrower will owe more in arrears the longer a lender drags out stalls the loan modification process. Thus, foreseeability of harm is clear.

73.   The foreseeability of harm to Plaintiffs was high because the failure to work with Plaintiffs as promised, and the failure to provide a timely, accurate, and good faith loan modification review, has caused Plaintiffs to be in real danger of losing her home and having her credit destroyed, not to mention limiting her options to those that will only benefit Defendants in the long run. Plaintiffs has been injured: her credit has been destroyed, she lost the ability to cure the delinquency

on her loan, and she faces the imminent danger of losing her home despite her illustrated ability to SERVICER'S that she can afford the payments.

74.   In regard to the closeness of the connection between Defendants' conduct and Plaintiffs' injury, Defendants' conduct was firmly and intimately tied to the harm because but for the actions and omissions of Defendants, Plaintiffs would not be facing imminent foreclosure of her home. Her financial hardship ended more than two years ago. Because Defendants were in full control of the loan modification process, it is reasonably foreseeable that Plaintiffs would rely on Defendants to conduct a good faith loan modification review and would not seek other alternatives to prevent foreclosure of the home or mitigate the debt owed.

75.   In regard to moral blame, Defendants' conduct was morally reprehensible as they acted without any regard for distressed homeowners, including the Plaintiffs, who tried desperately to save the Property from foreclosure during a national recession

76.   SERVICER were uncommunicative and left Plaintiffs in the dark for months while continuing to build upon the loan's default. SERVICER'S's recording of the NTS prior to providing a decision for Plaintiffs' application evidences the type of conduct that the legislature has enacted codes to prevent. Subjecting a borrower to dual tracking is illegal conduct that reinforces the view that Defendants' conduct was blameworthy. *See Ansanelli v. JPMorgan SERVICER'S Bank, N.A.*, No 10-cv-03892-WHA, 2011 WL 1134451, at *1.

77.   Furthermore, at the time Defendants made their representations and/or omissions to Plaintiffs as alleged above, they knew, or had reason to know, that said representations and/or omissions were in fact false, and nevertheless made them with the intent to defraud Plaintiffs and cause Plaintiffs to believe her home would not be foreclosed upon. Had Plaintiffs known the true facts, that Defendants never intended to offer a permanent modification, Plaintiffs would have

pursued other available legal remedies to protect her interests and would not have spent years in review for assistance only to be improperly denied base upon falsities.

78.   In analyzing the final *Biakanja* factor, the policy of preventing future harms, it is undisputedly clear that public policy encourages lenders and borrowers to work together to prevent a borrower from defaulting on his or her loan. *See Jolley,* 213 Cal.App.4th at 903 (the ongoing financial crises has caused the federal government to adopt programs that encourage lenders and borrowers to work together to prevent a borrower from defaulting on their loan). Here, any assistance Defendants offered to Plaintiffs was done in bad faith and without any controls or supervision to ensure that Plaintiffs would not be left worse off as a result of the loan modification application process.

79. Based on the foregoing, it is exceedingly clear that the *Biakanja* factors favor imposing a duty of care on Defendants, as their actions and conduct have gone beyond the role of a mere money lender.

80. Defendants breached their duty of care owed to Plaintiffs by partaking in the following unreasonable conduct that caused injury to Plaintiffs:

a. Defendants unfairly handled Plaintiffs' loan modification applications by unreasonably delaying the review process and repeatedly requesting duplicative documents and supplemental information;

b. Defendants improperly reviewed Plaintiffs' financials not once but twice, leaving Plaintiffs to deal with excessive arrearages due to Defendants prolonged review;

COOPER – AMENDED FEDERAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

c. Defendants negotiated opportunities to receive assistance and even make down payments without intending to follow through on promises;

d. Defendants relied upon miscalculations in reviewing Plaintiffs for assistance, including the use of inaccurate appraisals;

e. Defendants negligently pushed Plaintiffs further into an unrecoverable default by refusing to accept payments and allow Plaintiffs to become current on the Note.

81.    Additionally, Defendants violated statutes that serve as the underlying violations for liability under the doctrine of negligence per se, including Cal. Civ. Codes §§ 2923.6 and 2923.7.

82.    These statutes were enacted by the California legislature specifically to protect the rights of innocent homeowners suffering from financial hardships. These statutes were also enacted by the California legislature specifically to prevent the same injury that Plaintiffs will imminently suffer: wrongful foreclosure and subsequent eviction resulting from a wrongful foreclosure.

83.    The actions of Defendant are summarily denied Plaintiffs of any opportunity to utilize the avenues at her disposal to avoid the loss of her home.   Defendant's actions, therefore, are a substantial factor in Plaintiffs' harm.

84.    Defendants' violations directly and proximately caused the injuries suffered by Plaintiffs.  "But for" SERVICER promising Plaintiffs assistance and an accurate and timely review, Plaintiffs would not have spent so much time and resources working towards the modification. Additionally, had Defendants' complied with the aforementioned laws to begin with, Plaintiffs would not have suffered the very injuries that give rise to this Complaint because they would have been able to successfully pursue and obtain a non-foreclosure alternative and remain current on its loan.

85.   Due to Defendants' negligent conduct Plaintiffs suffered monetary loss, severe emotional stress at the impending loss of Plaintiffs' home, loss of home equity, damaged credit, and more.

86.   Plaintiffs demand damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiffs prays for judgment against Defendants as follows:

1. A declaratory judgment and order of this Court that:

(A) Defendants, and each of them, may not foreclose on the Property until they have honored and proven that all statutory requirements stemming from and relating to Plaintiffs' options to avoid foreclosure have been met.

(B)  That Defendants failed to abide by their own guidelines in qualifying or reviewing Plaintiffs for a loan modification in violation of Civil Code §2923.6.

(C) That Defendants and each of them, failed to provide the required statutory notifications and undertake the required courses of action as mandated under California Civil Code.

2. For a temporary restraining order, preliminary injunction and permanent injunction prohibiting Defendants from engaging in unlawful and deceptive acts and practices of foreclosing on property of California homeowners, including Plaintiffs, without considering within their guidelines, and when anticipated recovery through a modification or workout plan exceeds anticipated recovery through foreclosure on a net present value basis.

3. For disgorgement of Defendants' illegal profits and gain, including but not limited to all foreclosure fees and costs charged California homeowners, including Plaintiffs.

4. For an award of actual damages in an amount within the jurisdictional limits of this Court to be proven at trial but no less than $75,000.00.

5. For general damages, according to proof.

6. For special damages, according to proof.

COOPER – AMENDED FEDERAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

7. For consequential damages, and incidental damages, according to proof.

8. For an award of reasonable attorney's fees pursuant to agreement of the parties, according to proof.

9. For an award of interest, including prejudgment interest, as provided by law.

10. For costs of suit; and

11. For such other relief as the Court deems just and proper.

DATED: January 8, 2025                MIDWAY LAW FIRM APC


By: /s/ Marc Steven Applbaum
_____
   MARC STEVEN APPLBAUM
   Attorney for Plaintiffss

**VERIFICATION**

I,   Marc Steven Applbaum, Esq. am PLAINTIFF's attorney  and unavailable to execute this Verification. Upon information and belief, I avow that the facts herein are within my knowledge and to the contents thereof. The same is true of my knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters are believed to be true.

I declare under penalty of perjury that the foregoing allegations true and correct and that this Verification was executed in San Diego, California.

DATED:  January 9, 2025           /s/ Marc Steven Applbaum                          
                                  Marc Steven Applbaum Esq.